## COMMERCIAL BANK & TRUST CO. v. HAUF
(No. 1126; December 2, 1924; 230 Pac. 539)

Principal & Agent—Agent's Knowledge Imputable to Principal —Exceptions to Rule, Where Agent Adversely Interested— Exceptions Not Applicable Where Agent Sole Representative —Banks & Banking—Knowledge of Cashier Imputed to Bank.

1. The rule, that knowledge of an agent is imputed to his principal, is not applicable where the agent is engaged in a transaction in which he is interested adversely to his principal, or is engaged in a scheme to defraud his principal.

2. But knowledge of his agent is imputed to his principal notwithstanding that his agent is acting adversely to his principal where the agent is the sole acting representative of the principal in the transaction.

3. Where, in the purchase of negotiable paper, an agent is the sole acting representative of a corporation and he is deriving no personal benefit from the transaction, aside from the benefit that may come to him as a director and stockholder, and is personally not active, on behalf of the seller of the paper, in selling it in violation of seller's contract with maker thereof, such agent's knowledge of the existence of a contract between seller and maker of the paper not to negotiate it should be imputed to his principal.

4. Knowledge of bank cashier, purchasing notes before maturity from corporation, to whom they were given by makers in payment for stock, of an agreement between makers and corporation that notes were not to be negotiated for two years, and that makers could within such

time cancel stock subscription and have notes returned, *held* imputed to bank, notwithstanding that cashier was also a director of such corporation, where he was acting as sole representative of bank in the transaction, and bank subsequently ratified his act and raised no question of his good faith towards it in purchasing the notes.

APPEAL from District Court, Platte County; WM. A. RINER, Judge.

Action by the Commercial Bank & Trust Company against C. J. Hauf and another to enforce a collection of certain notes from a judgment for defendants, plaintiff appeals.

*Joseph Garst & J. E. Jacobson* for Appellant.

Appellant was the holder of the notes in due course; 8 C. J. 847. A lien holder is a holder for value to the extent of his lien; 3960 C. S. An instrument payable to order is negotiated by endorsement of the holder completed by delivery, 3963 C. S.; except where instrument bears date after maturity. Every negotiation is deemed prima facie to have been effected before the instrument was over due, 3978 C. S. Knowledge by its cashier is not imputable to appellant, for the reason that he was a director and agent for Wyoming Commerical Co. Hummel v. Bank (Ia.) 37 N. W. 954; Bank v. Bevin (Conn.) 455 Atl. 954; Louisville Co. v. Louisville Co., 75, Fed. 433; Bank v. Seldomridge, 240 Fed. 111; in re U. S. Hair Co. 239 Fed. 703; Real Est. Co. v. R. R. Co., 191 Fed. 566; Carlisle v. Norris, 109 N. E. 564; Lilly v. Bank, 178 Fed. 53.

*Marion A. Kline* and *Oscar O. Natwick* for respondents.

Alleged errors not mentioned or discussed in the briefs are waived; R. R. v. Lampman, 18 Wyo. 106; Phillips v. Brill, 15 Wyo. 539. The holder of negotiable paper as collateral is a purchaser for value in due course, but in the present case the notes were obtained by fraud and breach of faith, which required appellant to prove that it was a holder in due course; 3985-3988 C. S. It failed to sustain

the burden and cannot complain of the judgment; Holdsworth v. Fargo Co. 23 Wyo. 52. The contention that the cashier's knowledge is not imputable to the bank, for the reason that the cashier was director and agent of the Wyoming Commercial Co. is not sustained by the authority cited by appellant. In fact Louisville Trust Company v. Railway Co. supports respondents' position. Appellant is chargeable with the defect in the title to the notes in question, which its cashier required while acting as director of Wyo. Com. Co. in re U. S. Hair Co., 239 Fed. 703. It is true that a principal will not be charged with knowledge of his agent where the agent is engaged adversely to his principal; 31 Cyc. 1595. The evidence fails to disclose that the cashier was acting adversely to the bank. The jury was the sole judge of the credibility of the witness, in re Conroy v. State, (Wyo.) 211 Pac. 100; Beachy v. Jones (Kans.) 195 Pac. 186; Bank v. Hall (Idaho) 169 Pac. 399 Matlock v. Sheurman (Ore.) 93 Pac. 823.

TIDBALL, District Judge.

This action was commenced in the trial court by appellants as plaintiffs against respondents as defendants to enforce the payment of two promissory notes, each in the sum of $2,500, payable one year from date to "ourselves," signed by defendants, and endorsed and delivered by defendants to Wyoming Commercial Company, and by the latter company endorsed and delivered to plaintiff before maturity and for value. The notes were given for the purchase of stock in the Wyoming Commercial Company.

The third defense of defendants' answer alleges in substance that at the time of the execution and delivery of the two notes it was agreed and understood between defendants and Wyoming Commercial Company that if defendants were unable to pay the notes when due, or for any reason did not wish to pay them when due, defendant should have the privilege of renewing them for another year, and that defendants should not be required to pay the notes or the

interest for two years, and that if at any time within such two years defendants should become dissatisfied with the stock purchase or with the management of the Wyoming Commercial Company, or should wish to cancel their subscription for stock in that company, defendants should have that privilege, and in that case their notes would be returned to them. It was further agreed that during the two-year period above referred to, the notes should not be negotiated but should remain in the possession of the Wyoming Commercial Company, and that the stock subscribed for by defendants should not be issued until the two-year period had expired. It is then alleged that during the two-year period, defendants became dissatisfied with their subscription and so notified the Wyoming Commercial Company and demanded a cancellation of their subscription and the return of the notes in question, and at the same time tendered back the stock that had been mailed to them by the Wyoming Commercial Company in violation of the agreement. Defendants further alleged that they had received no consideration for said stock and had received no dividends thereon, so that the exchange of the stock and notes as demanded would place the Wyoming Commercial Company in possession of everything it had parted with on account of the transaction. It is further alleged that plaintiff had knowledge of this agreement at the time it purchased the notes.

The jury returned a verdict for defendants, judgment was entered thereon, and plaintiff has appealed.

There is substantial evidence in the record to show that such an agreement as pleaded by defendants was entered into, it being partly oral and partly in writing. There is also testimony to show that one C. D. Zimmerman, who was cashier of the plaintiff bank at the time the notes were taken by that bank, had knowledge of the agreement between defendants and the Wyoming Commercial Company. Zimmerman was also a director and fiscal agent of the Wyoming Commercial Company and was the sole acting agent of the plaintiff bank in the matter of the bank's acquisition

of the two notes. Plaintiff, in its brief filed in this court, admits there was a conflict in the evidence as to Zimmerman's knowledge of the agreement between defendants and Wyoming Commercial Company, but claims that this knowledge cannot be imputed to the plaintiff bank because Zimmerman was at the same time cashier of the plaintiff bank and a director and financial agent for the Wyoming Commercial Company. And, although, the specifications of error contain fifteen assignments of error, the only point relied on by plaintiff in its brief for a reversal of the judgment of the lower court as to the defense above set forth is that knowledge of Zimmerman cannot under the circumstances of this case be imputed to the bank and that, therefore, the defense of negotiation in breach of faith must fail. It must be conceded, we think, that except for this defect, the title of plaintiff was good under the Negotiable Instruments Law, and that unless the knowledge of Zimmerman of the negotiation in breach of contract between defendants and Wyoming Commercial Company can be imputed to the bank, the plaintiff is entitled to judgment, for the notes were complete and regular on their faces, the plaintiff became the holder of them before maturity, and paid value for them.

The rule of law relied upon by plaintiff is stated in 31 Cyc. 1595, as follows:

"The rule that notice to an agent is notice to the principal, being based upon the presumption that the agent will transmit his knowledge to his principal, the rule fails when the circumstances are such as to raise a clear presumption that the agent will not perform this duty, and accordingly where the agent is engaged in a transaction in which he is interested adversely to his principal or is engaged in a scheme to defraud the latter, the principal will not be charged with knowledge of the agent acquired therein."

The rule is also stated in 2 Pomeroy's Eq. Jur. 3d Ed. Sec. 675, as follows:

"It is now settled by a series of decisions possessing the highest authority that when an agent or attorney has, in the course of his employment, been guilty of an actual fraud contrived and carried out for his own benefit, by which he intended to defraud, and did defraud, his own principal or client, as well as perhaps the other party, and the very perpetration of such fraud involved the necessity of his concealing the facts from his own client, then, under such circumstances, the principal is not charged with constructive notice of facts known by the attorney and thus fraudulently concealed."

The same principle is stated in 21 R. C. L., p. 843.

It is a general rule of the law of agency that knowledge of the agent will be imputed to the principal, for the reason that it is the duty of the agent to communicate to his principal all material facts that have come to the agent's knowledge concerning the transaction in question; and the principal having chosen to deal by and through an agent, the law will presume that the agent performed his duty and communicated all facts coming to his knowledge to his principal. However, there is an exception to this rule of law, as shown above, in cases where the agent is engaged in a transaction in which he is interested adversely to his principal or is engaged in a scheme to defraud his principal, because in such cases there would arise a presumption that the agent would not perform his duty of communicating what knowledge he possessed to his principal, since such communication would defeat the fraudulent scheme of the agent.

But there is an exception to the latter exception, or perhaps it is better to say that in many cases the exception fails, where the agent is the sole acting representative of his principal in the transaction. The rule regarding a sole

acting agent is well stated in the case of First National Bank v. Blake, 60 Fed. 78, where the court, in discussing the general exception to the rule that knowledge of the agent is knowledge of the principal, uses this language:

"* * * It is well settled that an officer or agent, dealing with a corporation or his principal on his own account, is not presumed to communicate knowledge which it would be to his interest to conceal, and the corporation or principal is not chargeable with such knowledge. But there is no room for the application of this principle where the agent is the sole representative of both parties in the transaction. If Cornish was the sole representative of the bank in the transaction with himself, there was no one from whom information could have been concealed, or to whom it could have been communicated. If he was the sole representative of each party, each must have had equal knowledge. As the representative of the bank, his knowledge was not affected by his private interests, however much his conduct may have been. He necessarily knew as much in one capacity as he did in the other."

In the case at bar, Zimmerman was not a party to the contract between defendants and Wyoming Commercial Company. He was not the agent of the Wyoming Commercial Company who obtained the stock subscription from defendants, nor did he procure the contract as to the negotiation of the notes. The evidence fails to show that he had anything to do with the making of that contract, as it also fails to show that he had anything to do on behalf of the Wyoming Commercial Company with the sale of the two notes to plaintiff. Neither was he personally interested in this sale, deriving no benefit therefrom except such benefit as he might derive as a stockholder. No other officer of plaintiff bank had anything to do with, or any knowledge of, the purchase of the two notes by the bank, so far as the evidence discloses, but Zimmerman was acting as sole agent

of the bank in that transaction. There was no one representing the bank in the transaction except Zimmerman. A corporation can act only through its agents, and as Zimmerman was the only agent of the bank acting in the purchase of the notes, there was no agent of the bank engaged in the transaction to whom he could have failed to communicate the facts known to him.

We are aware that there is some apparent conflict in the decisions as to the knowledge that will be imputed to a corporation when such knowledge is possessed by a sole acting agent for the corporation, and many circumstances may arise affecting such imputation of knowledge. But we think the better rule is that, where, as in the case at bar, the agent is the sole acting representative of the corporation and where he is deriving no personal benefit from the transaction aside from the benefit that may come to him as a director and stockholder, and where he personally was not active on behalf of the person or company in selling negotiable paper in violation of contract, the knowledge of the agent as to the existence of a contract not to negotiate commercial paper should be imputed to that agent's principal. In other words, the bare facts that Zimmerman was a director and financial agent of the Wyoming Commercial Company and knew of the contract between defendants and that company, would not relieve the plaintiff bank from the imputation of knowledge possessed by Zimmerman when he was acting as sole agent of plaintiff in purchasing the two notes in question.

The agency of Zimmerman as cashier and active manager of the plaintiff bank is admitted; what he did in taking the two notes was authorized and ratified by the bank, for the bank at no time repudiated the transaction or questioned Zimmerman's authority, but, on the contrary, held the notes and brought suit upon them and is now appealing to this court to reverse the judgment below and thus affirm his acts. He stood in the place of the bank in acquiring the notes, acting as its sole representative in that transaction;

he knew that the notes of defendants could not be acquired by the bank unless the company from whom they were purchased negotiated them in breach of contract, and, so far as the evidence discloses, he did nothing to bring about such breach as a director or agent of that company, but his activity in the matter was confined solely to the bank. At the trial in the District Court, the bank ratified and stood upon his acts in every particular at all times, contending and by its evidence attempting to demonstrate that Zimmerman, as its agent, had no knowledge of any infirmity in the two notes, if any existed. It is only in this court that the bank has raised any question as to Zimmerman's good faith towards the bank in the purchase of the notes. Under such circumstances, we think the knowledge of Zimmerman was the knowledge of the bank.

For a discussion of the general questions involved in the matter under consideration, see 7 R. C. L. p. 658; 2 C. J. p. 868, Sec. 549; 7 C. J. pp. 530-535; Tremont Trust Co. v. Noyes, et al., 246 Mass. 197, 141 N. E. 93; also notes in 2 L. R. A. (N. S.) 993; 29 L. R. A. (N. S.) 562; and 49 L. R. A. (N. S.) 764.

The judgment of the District Court should be affirmed, and it is so ordered.

*Affirmed.*

Blume and Kimball, JJ., concur.